Deborah THOMAS, Plaintiff–Appellant,

v.

Dr. David J. MAHAN and The Board of Education of the City of St. Louis, Defendants–Respondents.

No. 65657.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 1, 1994.

Hugh R. Law, Lowenhaupt, Chasnoff, Armstrong & Mellitz, St. Louis, for appellant.

Kenneth C. Brostron, Daniel K. O'Toole, Lashly & Baer, P.C., St. Louis, for respondents.

KAROHL, Judge.

Deborah Thomas, a tenured teacher in the St. Louis Public Schools, appeals a circuit court order affirming the decision of the Board of Education of the City of St. Louis to discharge her from her position. She presents three points on appeal, all of which assert that the Board of Education's findings on three charges were not supported by competent and substantial evidence on the whole record. We affirm.

The following is a summary of the operative facts viewed in a light most favorable to the Board's decision. Thomas had been employed by the St. Louis Public Schools since 1982, when she was hired as a classroom teacher at Meramec School. She remained a teacher at Meramec School until discharged. She first was assigned to a second-grade class and was subsequently moved to the kindergarten. In 1991, she came under the supervision of Beverly Wilkins, when Wilkins received the assignment of Acting Principal of Meramec School. Wilkins did not reassign any teachers during the 1991–92 school year. Because Wilkins observed Thomas had difficulty with management of her kindergarten class, she decided to reassign her to the third grade for the 1992–93 school year. Wilkins also reassigned several other teachers on the grounds of difficulty with student management or for reasons involving class size.

The involved teachers appeared for a teacher orientation meeting on August 26, 1992, when Wilkins advised them of their reassignments. Thomas admitted she did not "sign in" on this day. She testified she arrived at the school at approximately 7:45 a.m. Wilkins testified Thomas did not arrive at school until 9:00 a.m., although she was required to be at school at 8:00 a.m. At the orientation meeting, Wilkins gave Thomas a paper with her new grade and room assignment on it. She asked Thomas to move her personal items out of the kindergarten room, so the new kindergarten teacher could get the room ready for the school year. Thomas failed to do so. During her lunch break, she telephoned the offices of her union and spoke with Mary Franklin, the union president, who told her she would call the personnel office of the Board of Education to see whether a kindergarten position was available at another school.

At approximately 3:10 p.m., Wilkins observed Thomas' materials had not been moved from the kindergarten room as requested. Because she felt this indicated there might be a problem in Thomas' accepting the new assignment, Wilkins contacted David Fleig, Executive Director of Elementary Schools for the Board of Education. Fleig arranged for a security guard to be present at the school the next day and advised Wilkins to handle the situation by giving Thomas the choice between accepting the new assignment or leaving the building.

On the following day, August 27, 1992, Thomas again did not sign in as required. Wilkins testified Thomas did not arrive until 9:00 a.m. When Thomas arrived, Wilkins called her into the principal's office, where she informed Thomas she had been tardy on both August 26 and 27. Thomas responded she was upset that she was being transferred from the kindergarten and she did not want to teach third grade. Wilkins explained she reassigned Thomas because of her difficulty with classroom management in the 1991–92 school year, and she wanted to give Thomas a chance to improve her performance. Thomas requested a transfer. Wilkins suggested Thomas make an appointment with the personnel office. She provided Thomas with the telephone number and told her she could use the telephone in the principal's office for privacy. Wilkins left the room. Instead of calling personnel, Thomas called the union.

When Thomas finished her telephone call, she left the principal's office. She told Wilkins she had not called personnel but that she had called the union office and someone for the union had told Thomas to remove her belongings from the classroom but not to leave the building and the union would contact personnel. Thomas remained at the school for the remainder of the day, visiting other teachers and sitting in the faculty

room. Thomas never reported to the classroom of her new third grade.

Later that afternoon, Wilkins asked Thomas whether the union had contacted her yet. It had not. Wilkins asked Thomas to contact her at home that evening to let her know what she was going to do the next day. Thomas failed to do so.

Thomas did not report to school on the following day, August 28, 1992. Between 10:30 and 11:00 a.m., she called the school and requested leave of absence forms from the secretary. Wilkins called Thomas and explained the leave forms were at the school and asked whether she wanted to pick them up or have them mailed to her. Thomas requested a mailing. They were mailed that day.

Wilkins notified the elementary school office that Thomas had failed to report on August 28 and she had learned Thomas intended to apply for a leave of absence. Thomas was told to meet with Fleig in his office at 8:00 a.m. on Monday, August 31. Thomas then contacted the union president, who advised her not to fill out the leave forms and also undertook to arrange the meeting with Fleig.

Thomas, Wilkins, Fleig, and the union president met on the afternoon of Monday, August 31, 1992. Fleig opened the meeting by explaining to Thomas that the purpose of the meeting was (1) to ascertain Thomas' position regarding charges she failed and refused her assignment and was insubordinate, and (2) to determine what Thomas intended with respect to the assignment. Wilkins and Fleig recalled Thomas never directly addressed these issues and each time she was asked whether she would take the third-grade assignment, she would not answer except to talk in general about alleged mistreatment. However, Thomas and the union president testified that Thomas said she would accept the third-grade assignment.

At the conclusion of the meeting, Fleig instructed Thomas to remain at home until contacted by a representative of the Board of Education. Fleig then met with Associate Superintendent, Dr. John Ingram, and Chief of Staff, Charles W. Simms. They concluded Thomas had been insubordinate and she had failed and continued to refuse to accept the third-grade assignment. It was subsequently recommended Thomas be removed from her teaching position. Accordingly, the only communication that Thomas received was a letter dated October 5, 1992, from the Superintendent, advising that she was suspended without pay and the Superintendent was recommending her dismissal.

Three charges were filed. Charges No. 1 and 2 were for tardiness on August 26 and 27 and unauthorized absence on August 28, respectively, in violation of R4610, which reads: "[T]he Board of Education expects all employees to be on the job on time every scheduled work day unless otherwise authorized.... No employee shall be away from his/her assigned duties without authorization for any reason whatsoever." Charge No. 3 was for insubordination in violation of R4840, which reads:

All employees are expected to conduct themselves in a professional manner that facilitates good order and brings credit to the St. Louis Public Schools System. All disorders and neglects to the prejudice of good order and discipline in the school system and all conduct of such a nature as to bring discredit upon the school system shall be considered conduct that subjects an employee to disciplinary action, including dismissal. Such conduct includes but is not limited to the following areas: ... 9. INSUBORDINATION Not obeying all lawful orders and directives issued by the employee's superiors and/or not treating his superiors with respect and courtesy in the line of duty.

After a hearing, the Board of Education found all three charges were proven and removed Thomas from her position of tenured teacher. The circuit court affirmed the decision.

On appeal, Thomas presents three points, which respectively challenge the sufficiency of the evidence in proving the three separate charges of tardiness, absenteeism, and insubordination. In sum, Thomas claims these findings were not supported by competent and substantial evidence. In addition, she claims even if the charges of tardiness and

absenteeism were supported by competent and substantial evidence, they did not justify her removal as a tenured teacher.

■■■ Neither the circuit court nor this court reviews the decision of the Board de novo. *Kimble v. Worth County R–III Board of Education,* 669 S.W.2d 949, 951 (Mo.App. 1984). Although all evidence before the Board is considered on judicial review, we are precluded from substituting our judgment on the evidence and may not set aside the Board's decision, unless it is unsupported by competent and substantial evidence on the whole record or is otherwise invalid. *Id.* at 951–52. The evidence must be considered in the light most favorable to the Board's decision, together with all reasonable inferences that support it. *Id.* at 952.

■ If there was substantial and competent evidence of any one of the charges, where the authorized punishment on the proven charge is termination of employment, the Board's decision must stand. *Kell v. Sayad,* 670 S.W.2d 82, 86 (Mo.App.1984). We hold the charge of insubordination was proven and do not decide whether the charges of tardiness and absenteeism were proven or whether the evidence proving those charges is sufficient to support an order of discharge of a tenured teacher.

■■ The evidence in support of the charge of insubordination is the testimony of Wilkins and Fleig that Thomas was directed to teach the third grade and refused. Although Thomas presented testimony rebutting this, it is well settled that determination of the credibility of witnesses is for the administrative tribunal, and if the evidence supports either of two contrary conclusions, the administrative determination must prevail. *Gamble v. Hoffman,* 732 S.W.2d 890, 892 (Mo. banc 1987). Furthermore, our review is limited. We may not substitute our judgment on factual disputes and may not set aside an administrative decision unless the decision is clearly contrary to the overwhelming weight of the evidence. *Id.* We find the evidence supported the Board's determina-

tion that Thomas was insubordinate, thereby justifying her discharge under R4840.

The judgment is affirmed.

AHRENS, P.J., and SIMON, J., concur.